IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GLORIA D. COOKSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-12-553-D |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration[1], | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her applications for disability insurance and supplemental

security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C.

§§ 416(i), 423, 1382.  Defendant has answered the Complaint and filed the administrative

record (hereinafter TR___), and the parties have briefed the issues.   The matter has been

referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action.  No further action need be taken to continue this action. 42 U.S.C. § 405(g).

§ 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications on April 23, 2008, alleging she was unable to engage in substantial gainful activity beginning April 25, 2003, when she was 49 years old, due to osteoarthritis and sciatic nerve problems. (TR 108-117, 130, 133). Plaintiff also alleged disability due to Type II diabetes mellitus with vision problems and high blood pressure. (TR 161, 164, 179). Plaintiff has a high school education with vocational training in micro-computer technology, and she previously worked as a telemarketer until she stopped working in April 2003 "due to lack of work." (TR 134, 138, 149).

In an administrative hearing conducted on May 6, 2010, before Administrative Law Judge McLean ("ALJ"), Plaintiff testified that she lived with her mother, she was 56 years old, she last worked on April 25, 2003, as a telemarketer, and she is unable to work due to degenerative joint disease and arthritis in both knees, for which she occasionally takes narcotic pain medication, and low back pain causing occasional sharp pain approximately three times a week radiating "from the knees up." (TR 28-34). She stated that about once per day her right knee "slips out of socket" and locks after sitting for two to three minutes. (TR 35-36, 46). Her knee pain is constant despite pain medications, and she can sit for only 30 minutes, stand for only five to six minutes, walk ½ block, and cannot squat, stoop, kneel, crouch, or crawl. (TR 36-38). She cannot reach above her head due to right shoulder problems, although doctors have told her nothing about this symptom. (TR 39). She takes

2

medication for asthma and high blood pressure which controls these conditions. She takes medication for diabetes which causes her to "shak[ ] real bad" when her blood sugar level drops, occurring four to five times in the previous two months, and she has migraine headaches about once per month treated with pain medication and going into a dark, quiet room. (TR 39-40). She spends her days "[s]itting around talking to [her] mother," watching television, and preparing her meals. (TR 41). She stated her only income is from food stamps and that her 77-year-old mother does the home maintenance chores. A vocational expert ("VE") testified that Plaintiff's previous telemarketer position was sedentary, semi-skilled work and that this job provided Plaintiff with transferable work skills of customer service and selling, record keeping, computer data entry, and supervision skills. (TR 47).

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 25, 2003, the date she alleged her disability began. Following the well-established sequential evaluation procedure adopted by the agency, see 20 C.F.R. § 404.1520(b)-(f), the ALJ found at step two that Plaintiff had severe impairments due to bilateral osteoarthritis of the knees, hypertension, diabetes, obesity, and stage two kidney disease. (TR 12). At the third step, the ALJ found that Plaintiff's impairments did not satisfy or equal the requirements of an impairment deemed disabling *per se* by the agency.

At step four, the ALJ found that despite her impairments Plaintiff had the residual functional capacity ("RFC") to perform sedentary work requiring no more than occasional stair or ramp climbing or stooping, no ladder, rope, or scaffold climbing, and no balancing, kneeling, crouching, or crawling. Based on this RFC and the testimony of the VE, the ALJ

found that Plaintiff was capable of performing her previous job as a telemarketer and, reaching step five, that Plaintiff was capable of performing other jobs available in the national economy, including the jobs of records clerk, telephone answering service, and clerical compiler.  The Appeals Council denied Plaintiff's request for review (TR 1-3), and therefore the ALJ's decision is the final decision of the Commissioner.   See 20 C.F.R. §404.981, Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

Judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).   The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole.  Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. RFC and Credibility

Plaintiff contends that there is not substantial evidence to support the ALJ's credibility determination and that the ALJ's credibility determination was faulty.  Plaintiff also asserts

that the ALJ's RFC determination is not supported by substantial evidence.   The

Commissioner responds that no error occurred in connection with the ALJ's credibility and

RFC determinations and that substantial evidence supports the ALJ's determinations at step

four and step five.

At the fourth step of the evaluation process, the ALJ must determine whether the

claimant retains the RFC to perform the requirements of all past relevant work.   The ALJ

must undertake a three-phase analysis at step four.  In the first phase, the ALJ must evaluate

the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir.

2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir.

1996).   RFC represents "the most [that the claimant] can still do despite [his or her]

limitations." 20 C.F.R. § 404.1545(a)(1).

In the second phase, the ALJ must determine the mental and physical demands of the

claimant's past relevant work.  Bowman, 511 F.3d at 1272 (quotations and citation omitted);

Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling 82-62, "Titles

II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," 1982

WL 31386, at 4 (1982).  In the third phase, the ALJ must "determine[] whether the claimant

has the ability to meet the job demands found in phase two despite the mental and/or physical

limitations found in phase one." Winfrey, 92  F.3d at 1023 (citations omitted).  The claimant

bears the burden of proving an inability to perform the duties of the claimant's past relevant

work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir.

1993).

The assessment of a claimant's RFC generally requires the ALJ to consider the claimant's credibility and "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling 96-7p, 1996 WL 374186, at * 1 (1996).  "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

Factors relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). Plaintiff's "failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996).

Addressing the credibility determination first, the ALJ reviewed the medical evidence in the record, including records of treatment of Plaintiff at the Oklahoma City Indian Clinic, the report of a consultative physical examination of Plaintiff conducted by Dr. Beard in July

2008, and records of treatment of Plaintiff at the Oklahoma Heart Hospital in July 2009 and by Dr. Zewdie. (TR 12-14).   After recognizing the pertinent factors involved in the credibility determination, the ALJ summarized Plaintiff's hearing testimony and found that Plaintiff's allegation of disabling pain was "not fully credible." (TR 16).  The ALJ reasoned that her

> allegations of disabling symptoms are not medically supported in the medical evidence by clinical signs, symptoms, or laboratory findings.  The claimant's activities of daily living have not been profoundly compromised by these impairments, as evidenced by the ability to maintain a home, prepare simple meals, play with her grandchild, and make trips to the store as necessary.  This is not to say the claimant is symptom-free or does not experience some difficulty in performing tasks.  In fact, the [ALJ] is persuaded that the claimant's treatment history provides a reasonable basis for some of [the] symptoms alleged by the claimant and would impose some restrictions in her ability to perform work related activities.  The statements are inconsistent with the objective evidence that does not demonstrate the existence of limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis.

(TR 16).

In her credibility determination, the ALJ addressed several of the factors deemed relevant to such decisions.  The ALJ considered the consistency of her testimony with the objective medical evidence.  Although the ALJ did not explicitly address the contents of the medical record that she found inconsistent with Plaintiff's testimony, the ALJ had already discussed the medical record in the decision, noting that Plaintiff's treating clinic's staff had prescribed only conservative measures, including anti-inflammatory and diuretic medications

and a knee brace to treat her degenerative joint disease in her knees, noting that the consultative examiner found Plaintiff exhibited normal range of motion in her legs and low back pain with range of motion, but she walked with a steady gait without assistance, that arterial testing of Plaintiff's legs showed no evidence of significant stenosis, that she had been repeatedly advised by treating physicians and medical professionals to lose weight with diet and exercise, that she had been advised by Dr. Zewdie to follow a low sodium diet as the only treatment for her chronic kidney disease, and that doctors had found her diabetes was controlled with medication.

Having reviewed the medical evidence, it is clear the ALJ considered the relevant evidence in the record. The ALJ's credibility finding that Plaintiff's testimony was not consistent with the medical evidence in the record is well supported. In particular, Plaintiff was prescribed narcotic pain medication for her knee pain to be taken as needed in December 2009. (TR 303). Plaintiff testified that she took the prescribed pain medication only occasionally and that she usually took only over-the-counter aspirin. (TR 46). Plaintiff complained to her treating physician, Dr. Saeed, that her knee pain prevented her from walking "too much" but she was able to drive, and she exhibited no restricted movement in her knees. (TR 306). The physician completed forms for Plaintiff to receive a handicapped parking sticker but made no further treatment recommendations. (TR 306).

The ALJ also properly considered Plaintiff's usual daily activities. Although Plaintiff complains that her daily activities were minimal and performed sporadically, Plaintiff did not state that pain limited her activities other than she must "move around" after sitting for about

30 minutes because of her knees. (TR 41-42, 169-171, 215).  Plaintiff stated that her mother performed the home chores, but she did not testify that she was unable to perform any chores. She previously stated that she cooked her meals, washed dishes and laundry, went to her doctor's appointments and to the grocery store, watched television, she could maintain attention "[a]s long as it takes to get the job done," and she used only a right knee brace when shopping or standing for very long. (TR 43, 142-145, 146).  There is substantial evidence in the record to support the ALJ's credibility determination, and the ALJ did not err in evaluating Plaintiff's pain complaints.

Plaintiff argues that the ALJ's RFC assessment did not include non-exertional limitations due to Plaintiff's chronic knee pain.  However, the ALJ found that Plaintiff's RFC for work was limited to the performance of sedentary work with several postural limitations. In light of the VE's testimony that someone with Plaintiff's RFC for work could perform Plaintiff's previous telemarketer position, the ALJ found at step four that Plaintiff was not disabled.  "[A] sedentary job is defined as one which involves sitting, [but] a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§404.1567(a), 416.967(a).  "[S]itting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10.

Plaintiff does not point to any evidence in the record suggesting that additional non-exertional limitations should have been included.  Plaintiff's argument is conclusory at best. Plaintiff testified that she spent her days generally sitting in her home talking with her mother although she had to "move around," and she also reported to the consultative examiner that

she generally spent her days playing with a grandchild. (TR 41, 215).  These statements of her daily activities are consistent with the ALJ's RFC assessment.

Nevertheless, Plaintiff argues that she had additional "non-exertional limitations due to the need to get up and move around for five minutes for every thirty minutes of sitting and or the need to elevate her feet every thirty minutes as well." Plaintiff's Opening Brief, at 9. Plaintiff is describing postural limitations based solely on her testimony at the hearing, and the ALJ found her testimony only partially credible for reasons well supported by the record.

Plaintiff testified that she could sit for 30 minutes before she had to "get up [and] walk around or elevate my leg." (TR 36-37).  She related this limitation to "pressure on [a] nerve," which she earlier stated was her "sciatic nerve," causing left knee pain. (TR 33, 36).  No medical evidence in the record supports her allegation of a sciatic nerve impairment. Furthermore, there is no objective evidence in the record or statements by treating physicians or clinicians suggesting that Plaintiff's ability to work was limited in this manner.

The VE testified that an individual who needed to change positions between standing and sitting could perform the telemarketer position as long as the individual did not leave his or her workstation. (TR 51).  In the absence of any objective evidence in the record supporting Plaintiff's allegation that she must walk every five minutes after sitting for 30 minutes, the ALJ did not err in including additional non-exertional limitations in the RFC finding.  Because there is substantial evidence in the record to support the ALJ's RFC finding and ultimate conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____May 22nd_____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____2nd_____ day of _____May_____, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE